3-10-0465 James L. Sadler and Monica J. Sadler, Appellant Peter C. Beweger v. Lynn J. Service Appellate Jeffrey McDaniel. Good afternoon, Your Honor. This case involves the statute limitations for written promissory note and the 10-year period of time within which the statute runs after the note has become due. The question presented is whether in June of 2000 the promissory note, which was issued in 1994, became accelerated by a reaffirmation of that note by the defendant, Lynn Service, in what she did at that time in terms of providing a check to the Sadlers for the payment of the interest due to date on that note. As a preliminary matter, you're all suggesting that 13-206 is the proper statute? Yes, Your Honor. And the language says, with respect to the demand promissory note dated on or after the effective date of the Amendatory Act of 1997, if a demand for payment is made to the maker, an action to enforce a demand promissory note is barred. Do these notes fit into that? I think the statute applies back to the time of this note. What about the language itself in the statute? The language itself does provide for the 10-year period of limitations and also... It says, in the very beginning, it says, with respect to promissory notes dated on or after the effective date of this Amendatory Act of 1997, a cause of action on a promissory note payable at a definite rate, with respect to demand dated on or after the effective date of this Amendatory Act. What about all that? The statute, Your Honor, that I cited on page 2 of our appellant's brief doesn't have that language in it. It reads, actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing and actions brought on the Only Wage Payment and Collection Act shall be commenced within 10 years next after the cause of action occurred. Then it says further down, for purposes of this section, with regard to promissory notes dated on or after the effective date of this Amendatory Act, the cause of action on a promissory note payable at a definite date accrues on the due date or date stated. Now, this promissory note didn't have a due date stated in it. At any rate, it's our understanding, Judge, that this does apply, and it's our position in this appeal and in this case that the trial court erred in failing to find and hold that the promissory note was reaffirmed by the debtor defendant. We're not, in this appeal, claiming manifest weight of the evidence. We're claiming in this appeal that we're entitled to judgment for the plaintiffs and against the defendant on this note because the trial court applied the wrong burden of proof and the trial court based its decision on parallel evidence of the defendant, which was completely and inherently unbelievable and rejected. Not only did they base the decision on it, it was the reason for the defense verdict. Not only did the court base its decision on that unbelievable parole evidence, but it also refused to consider the parole evidence submitted by the plaintiffs in this case. Now, Jim and Monica Sadler, the plaintiffs, are good friends of Lynn Sadler and her husband and serviced prior to this litigation. Back in 91, the Sadlers loaned the services $20,000 so that they could buy a lot in the Oak Run subdivision in Knox County, Illinois. Now, that loan, too, called for 6% annual interest and actually was not paid off for a period of six years. The reason being that the Sadlers were indebted heavily. They had mortgage indebtedness in that timeframe that went from $400,000 to $630,000. The testimony from the record shows that the services were, in fact, in that timeframe living paycheck to paycheck and on their credit cards. In 1994 May, a second loan was made, and that's the subject matter of this lawsuit. That was made for $29,000 to Lynn Sadler, the defendant. Same interest rate, 6% per annum, but no expressed due date. Two payments were made in interest on that obligation, one in May of 1995 and one in May of 1996, both in the amount of the annual interest due of $1,740. Now, at the time of this loan, the defendant, Lynn Sadler, invested the loan in the President Riverboat Casino stock and immediately lost it. Same timeframe, she lost $60,000 more in the stock market that she was investing in, and this compounded their debt problems and difficulties so that the Sadlers had held off from cashing their interest checks on both loans. When was the payment made? I'm saying the payment would have been made June 15, 2000. And how was that? It was by a check drawn on the Lynn Service account payable to Jim Sadler in the amount of nothing. It didn't fill in the blank amount. Was it ever filled in? No. How was that a payment? Because, Your Honor, if you just listen a second, I'll tell you. At dinner on June 15, 2000 at Short Hills Country Club, the night before the Sadlers and Services and two other people were going to plan a golf outing for the Trinity Foundation, at that time, Lynn Service handed that check to Jim Sadler and said, Jim, fill this out, with interest payable to date, and go ahead and cash it. Jim didn't cash it. But, Your Honor, we say that payment is when you tender payment of a debt, not when it's cashed. What does the UCC say about that? I haven't found that in the UCC. But I found it in Webster's Dictionary. And I cited that in my brief, which is payment is the tender of compensation for a debt. It doesn't say it has to be cashed. All right, if you listen to that story, it's pretty reasonable. So what happened at trial? Well, we got a different story from Lynn Sadler. In her deposition, she testified, yeah, I gave that check to Jim Sadler at the dinner before the golf outing. But at trial, she said, after conferring with her husband about what they would say, that she produced this check register, alleged check register, M. And that check register, she pointed to a check dated June 15, 2000, check number 39, which was entered for $300. And she said she gave that to her husband to give to Jim Sadler the next day, June 16, to pay for the golf outing. Well, the fact of the matter is that three months before that, actually in March, Jim Sadler had paid the entire golf fees for the four of us playing in that outing. And Plaintiff's Exhibit 16 is a letter from the President and Attorney Foundation acknowledging payment for that group to Jim and his own canceled check in the amount of the payment of $175 for each of the four of us. So the fact of the matter is, the evidence that this was tendered to pay for the golf outing is unbelievable. You look at the testimony of her husband, and he comes on and tries to corroborate the fact that he received his check and he was going to deliver it to Jim. But then finally, when his own counsel questioned him on the matter, he said, it's been eight years ago. I simply don't remember and I don't know. Whether I gave it to Jim or whether my wife gave it to Jim. It's our position in the case that this was, in fact, totally unbelievable evidence in view of the real truth of the matter, which we proved through Plaintiff's Exhibits 16 and 63 and Jim Sadler's testimony. And the cases we've cited are Lasky v. Smith and Manor v. Norris on pages 14 and 12 of our brief, which say that inherently improbable or unbelievable testimony should not be believed by the trial court. In this case, not only did the trial court believe it, but based its decision on it. But didn't Mrs. Service, her deposition testimony stopped at her saying that she gave the check to Mr. Sadler, right? She didn't say, Jim, I mean, she didn't testify at deposition that she said, fill it in for plus interest. No, you're right, Your Honor. She simply said she gave that check that's an issue to Jim. What's the difference between believing whether or not it's more probable that you'd sign a blank check thinking it might be in the amount of $300,000 or it might be in the amount of $29,000 plus interest? What's important, Judge, is that at the time that this occurred, the only indebtedness that the defendant had to the Sadlers was the promissory note, Plaintiff's Exhibit 2. So that is the only thing that this could have been delivered as part payment of. And what's also interesting from the record is, nowhere in the record does it show up that there was ever a check for $300 written on the account of the services. Two minutes. In fact, Mrs. Service testified that she didn't even know whether the copy of this check register was from the year 1991, 95, or 98, as opposed to the year in question, 2000. Our contention, Your Honors, is that this check, when you interpret it through the parole evidence rule, has resubmit, should be done, whenever a document is lacking a material part, parole evidence is admissible to explain it. We've cited a couple of bank cases where that happened on promissory notes where people were allowed, defendants were allowed to say, we signed as sureties, not as makers. It happened on another bank, or an interest payment, endorsed on the back of the check. And these are Myer v. Nordmyer at page 7, and the two bank cases at page 9 of our brief. Those cases are from 47. They're all old cases, Justice. I couldn't find all of the new ones. Some of the cases, they're all before the UCC, and there's a couple that are before the NIL, right? Yes. But we've been, since the 70s, we've been under the Uniform Commercial Code. True. Including Michael Ford dealing with bank notes. Here's our position, finally, is that instead of the burden of proof, which says any slight acknowledgment of the debt that is being reaffirmed, this judge said that we had to prove that reaffirmation by clear and unequivocal evidence. Wrong burden of proof. Then this judge relied upon parole evidence that was unbelievable from the defendant, and rejected the parole evidence that proved that this was tendered as a payment of interest due on that check up to and including June 15, the year 2000. That check was never cashed. That check was never cashed. And it's still our position, Judge, that payment isn't cashing. Payment is making payment or tendering payment toward a debt. And what was the amount in the check? No amount was in, and that's why parole evidence should have been permitted to prove that it was to be filled out in the amount of the interest due to that date. Counsel's time. Thank you. May it please the court. Justices of the 3rd District Appellate Court. Mr. Friedweger. Looking at this case, we have a couple things we need to be mindful of. The factual determinations that were made by our trial judge. The standard of review for that is that the decision is to be reversed only if it's against the manifest weight of the evidence. What was the rationale for using 13-206 by the trial court? Interesting question. We had argued earlier in the case. I saw that. You argued the other section applied. And there's just a finding, I mean a determination by the court that 13-206 applied. Was there a rationale anywhere? I think the court believed that it was a plain written contract and that's why 206 would have been a negotiable instrument, which we had argued earlier in the case. I'm not sure that it made a huge difference in the outcome. Because a 6-year statute of limitation under a negotiable instrument would have expired before the tenure under the facts in this case. But it was our argument that this was a negotiable instrument. It should have been a 6-year statute of limitation. When I looked at the UCC, I believe what happened is that the provision that talked about a 6-year negotiable instrument was eliminated. And so we fell back to the more generalized tenure. However, the interesting question in this case was what's kind of our triggering date? I thought the triggering date for this was... Well, if you fall back on something, wouldn't you fall back on the over section that had been in place before 13-206 under the retroactivity? The older version of 206? Yeah. Under the Uniform Commercial Code. I believe that you would. And when we look at the newer version of 206, it does tell us in the footnotes the first sentence is the older version, and then the second, third, and fourth were amended effective January 1st of 1998. So there is some clarity there as to which provisions apply. And I think the court had asked Mr. Friedrich about that. Continuing on, Your Honor. Unless you have further questions. Go ahead. The standard for issues of law, of course, is de novo, and this court can go ahead and approve the findings of the court and the ruling of the court for any reason that's supported by law or by the facts. Your Honor has pointed out, I think properly, the issue of do we have a payment in this case? We don't have a payment in 95, we don't have a payment in 96, and we don't have a payment in 2000 because none of those checks were actually cashed. I believe that the UCC tells us that a payment is made once that check has been honored and that check was never deposited, let alone was it honored. So we have no payments in this case. And therefore that provision of 206 that says that the statute of limitations can be extended an additional 10 years from the date of a payment is inapplicable because we have no payment in this case. The one check in question has never been even filled out. Is that right? The 2000 check has not been filled out. There was no number put in there. There was no notation in the memo line as to what it was for. And that was judged for its finding. It said there was inadequate proof for the plaintiff, here the appellant, to meet his burden of proof that that check was clearly created for a new promise for payment of money for a debt that was in existence that was unpaid and that there has to be an intent for that new promise to be created. And Judge Fore in his ruling on the request for reconsideration set forth that criteria and said there's insufficient evidence there and therefore the plaintiff has failed to meet his burden of proof of establishing a new promise for payment. I hear reaffirmation. I'm not sure reaffirmation is a standard here. I don't think it's been briefed. I think reaffirmation is an aspect of a new promise to pay money. And that is required to be in writing under 206. And we don't have that in this case. We have a written document. We have a check. It has all the deficiencies of not having an amount filled in and has a deficiency of no description. Judge Fore had ruled essentially that that's inadequate for them to establish this exception to the general rule of the 10-year statute of limitations. The argument has been made that parole evidence should have been... What statute of limitations are you... What section are you saying the judge used? I think he used 206. I think that's what it says in his ruling. And that deals with promissory notes? It does. And you said earlier that you thought maybe he didn't think it was a promissory note and thought it was something else in the general contract? I asked you, why do you think he used 206 rather than the earlier section? I think he considered the promissory note to be a contract, and both of those are dealt with under 206. With that, he made a distinction. He does call it a promissory note throughout. I don't think he calls it a written contract. Continuing on, Your Honor, the issue of parole evidence has been raised... There was a lot of parole evidence in this case. There was three days' worth of parole evidence that could be argued, and Judge Fore parsed through all that. I think he did consider parole evidence as the issue of whether or not there was a payment. He certainly heard evidence that was parole evidence throughout the trial. There were no objections ever made as to parole evidence, so I'm not sure what parole evidence was kept out. I think that this case basically boils down to the plaintiff's appellant believing that their version's right and that how can somebody disagree with their version? Well, we have judges and the judge's role is to decide after hearing all the evidence, judging all the credibility, what makes sense and what doesn't make sense. That doesn't mean that we have an error here on appeal. It simply means that the court found the version of the facts from the defendant more believable, and that's the actual finding from Judge Fort. When we talk about how this June 15, 2000 check, what its purpose was, he said he found it more believable that it was to be used for golf than it was to be used for a payment or a partial payment on the 1994 promissory note. Disagreement doesn't mean that the judge failed to admit the evidence. It doesn't mean that the judge failed to consider it. When we look at 206 and it sets forth this standard, we do have the language in there that a new promise to pay money has been made and we see the case law that interprets it that has to be in writing, it has to be clear, it has to be, again, a debt unpaid with an intention to pay upon it. The case law that's been cited by the plaintiff appellant in this case is all ancient text and sometimes that is good and sometimes it's not so good. In this case, we would argue that it's inapplicable because it predates the more current version of 206. It's clear that when the statute was created that there was a requirement that the new promise to be paid be put in writing. If we look at some of the older cases, it appeared that it could be orally done, in which case it was a five-year statute of limitations or if it was in writing, in that case it would be a ten-year statute of limitations. The oral aspect of it was kicked out once 206 was put into the statute and so we're left with the question, do we have a writing that is a new promise? And we don't. We have a check. And the check, looking at the four corners of the document, doesn't contain enough information from which we can find that 206 is met. The ten-year statute of limitations had expired. The latest date would have been May 2, 2006. This lawsuit was not filed until December 18, 2006. It is time-barred under the most generous version which would be to acknowledge that checks tendered were actual payments. I don't think that's the evidence in this case. For the foregoing reasons, we would ask that this court affirm the ruling of Judge Fork and in the event that the court finds a technical issue, because this is a judge trial, not a jury trial, there certainly could be a remand with appropriate instructions. I'm just not sure that there are any appropriate instructions to be given. I think that the decision is well supported by law and fact, and the disagreement of the plaintiffs doesn't create a genuine appellate issue. There's no dispute that demand wasn't made until 2006, correct? Yes, I believe that the first demand letter that was issued was October of 2006. And the demand feature, if memory serves me correctly, is June of 2006, which would have been effective after January 1st of 1998. Thank you. Counselor, I have a question, just to make sure I understand the facts correctly. When the two interest payments were tendered in May of 95 and May of 96, was there a request or an understanding that those checks would not be cash? There was a lot of testimony on that point, and I believe that Jim Sadler had testified that he did not have a specific discussion on that point with Lynn Service, but instead he understood, because there were alleged financial problems, that it may not be in the best interest of Lynn to cash those checks. However, I don't believe there was any testimony in which either Jim Sadler or Monica Sadler testified that Lynn Service asked that those checks be held. All right. Thank you. Thank you. Please, Court, Counsel. As far as the application of the statute that we've been talking about, 13-206, there was never an issue in this trial court on that matter. The trial court applied that. There was never a claim that any other statute should apply. Didn't the defendant at first argue that 3-118 applied? I'm sorry? That 3-118, the Uniform Commercial Code, applied? There's no argument to that effect in this trial, and there's none in the brief. Not in the brief. I'm talking about below. No, Judge, this trial was tried on 13-206 as the applicable law. The other thing, he comes up and argues that no payment was made under the UCC. If you look in the Appley's brief on page 8, where they address payment of indebtedness, not one thing is mentioned in there about payment being governed by the UCC, nor was it in the trial court. He's now raising it in oral argument for the first time in this court. How much was paid, under your view? Under my view, I didn't calculate the interest, Judge, but it would have been 4 years of interest at 6% per annum, so it would be 4 times 1740. When does that happen, the calculation? It should have happened when our client made it, as he was authorized to do, on June 15 at dinner, and had he not had a soft heart for the friends at that point in time, he would have. But I don't think his kindness to the defendant is tantamount to there being no payment made. If you listen to the testimony, read it, take this check, Jim. I know it's been a while since we've done anything on this. Note, bring it up to date with interest, fill it in, and cash it. That is the testimony that should have been decisive of the case, because it proved the content of a document that was materially missing in part by the parole evidence that was admissible in the case, and it showed that the basic acknowledgement of the debt occurred, and the intent to pay the debt occurred, which is the gist of the affirmation. Thank you. We will take this case under advisement and roll